Parker, C. J.
The plaintiffs in this suit are the heirs of Wib *252 liam Scott, who was, before the 4th day of June, 1794, seized in fee simple of the lands and tenements described in the declaration.
On that day he executed and delivered a deed of bargain and sale, absolute in its terms, of the * premises to John Southgate, for the consideration of five hundred pounds of the former lawful currency ; and, on the same dayj Southgate, the grantee, executed and delivered to Scott a writing obligatory, in the penal sum of one thousand pounds, with a condition which would render it void, if, upon payment of five hundred pounds by Scott within six years from the date, with lawful interest annually, he should reconvey the premises. This is to be considered technically a bond of defeasance ; and by our statute (1) the deed and bond together are to be considered a mortgage for the security of a debt, and to be treated in all respects as such, as much as if the condition had been expressed in the deed itself.
It appears, that Southgate, the mortgagee, did not enter and take possession immediately upon the delivery of the deed ; one Morgan being then in possession under a lease from Scott, which had been executed a short time before the deed to Southgate. But Southgate was made the attorney of Scott, to receive the rent from Morgan, and with power to enter and evict him, if he should fail to perform the covenants he had made with Scott. Afterwards, and within a year from the delivery of the deed, Morgan having deserted the premises, Southgate obtained possession of the lease from Morgan's agent, and cancelled it ; and then leased the premises to one Bates, who entered and occupied the same eighteen years under Southgate and his representatives, many repairs having been made by Southgate, and some adjoining land having been purchased and added to the farm by him. The plaintiffs, in March, 1814, supposing that a right in equity to redeem was open, tendered to the defendant, administrator de bonis non of John Southgate (William Southgate, his son, having first administered), a sum supposed to be equal to what was due, after a reasonable deduction for the rents and profits of the estate. If the equity of redemption has not been lawfully foreclosed, they are entitled to maintain this process under the statute of 1798, c. 77. * Several objections have been taken to the claim of the plaintiffs. In the first place, it is contended, that, if the equity is open, yet the plaintiffs cannot prevail in this suit, because the tender was not made to the heirs of Southgate, but to his administrator.
But we are of opinion, that the tender was rightly made. The mortgage is a mere chattel interest, of which the administrator has the control. He is responsible for the debt for which it is a pledge. *253 and the statute of 1788, c. 51, provides, that he shall execute a release upon payment of the sum due, when he shall have recovered possession of the mortgaged premises. A possession obtained by entry without suit is within the equity of the statute; and it is averred in the plaintiff’s bill, and not denied, that the defendant did, in fact, enter under the mortgage.
It is next contended, that Scott, the mortgagor, had relinquished his right of redemption ; or that the transactions between the mortgagor and mortgagee are equivalent to a surrender or cancelling of the bond of defeasance.
It is, perhaps, a fatal objection to this position, that no deed, or other writing, is shown, by which the interest of Scott, secured by the bond of defeasance, has been transferred or extinguished ; nor is there any evidence that the bond was ever delivered up to be can-celled. The right in equity of redeeming real estate mortgaged is such an interest in land as cannot, by our statute of frauds, (2) be passed by parole. All which the evidence amounts to is, that Scott proposed to sell to Southgate for a certain sum ; and that Southgate did not accept the terms, but proposed a smaller sum. Whether the terms were finally accepted is wholly uncertain from the evidence.
But it has been contended, that, notwithstanding there is no direct evidence of a relinquishment by Scott of his right to redeem, or of any direct agreement to render the estate absolute in Southgate; yet that certain facts proved will justify a presumption that such contract had taken place between the parties.
*The facts alluded to, and relied on in support of this suggestion, are, that, in December, 1794, Scott, who had then removed to Troy, in the State of New York, wrote to South-gate, and desired him to advance four hundred pounds more upon the estate, saying, that, if he would, he would assign the lease, and make an end of it; that, in May following, he sent a power of attorney to Southgate to receive the rents to his own use ; and that Southgate did make some further advances for Scott, and did cancel the lease to Morgan, and by a new lease let the premises to Bates, who occupied them under Southgate, and paid rent to him, during eighteen years.
These facts, by themselves, go very strongly in favor of the presumption, that, by consent of the parties, the right in Scott to redeem had been relinquished, and that the estate had become absolute in Southgate. But, on the other hand, two letters from Southgate are produced, in both which he declines accepting the proposal of Scott, but oilers to take the estate at a lower rate, which offer it does not appear that Scott accepted. It appears, also, that, when Southgate *254 had cancelled Morgan’s lease, and let the estate to Bates, he informed Scott of what he had done, stating the particulars of the bargain, and that Southgate, notwithstanding, afterwards said, that the heirs of Scott were the lawful owners of the estate. Under these circumstances we cannot say we are satisfied that the bond of defeasance had become void ; especially as it has never been traced to the possession of Southgate or his representatives, but has been recently found among the papers of Scott.
But the principal ground of defence to the suit is, that the plaintiffs are barred of their right to redeem, because Southgate, or his legal representatives, have been in possession more than three years after entry for condition broken, or after notice to the heirs of Scott that they held possession for that cause, or that there have been such public and notorious acts by them as are equivalent to such notice.
* Upon this point the evidence may be considered somewhat equivocal. It certainly falls short of satisfactory proof; and, as the affirmative is upon the defendant, we must hold that he has not maintained his defence.
Southgate entered in less than a year after the execution of the deed, even before any legal demand of interest existed ; so that he could not have entered then for condition broken, but only under his right as mortgagee. Having a> right to the possession which he had thus acquired, the bare continuance of that possession would not indicate an intention to foreclose the equity; but there should have been some act of notoriety, or at least some public declaration, from which notice to the mortgagor might be presumed, showing that he continued the possession with a different motive from that which induced him to enter. We look in vain for evidence of such facts or declarations in the lifetime of Southgate; but, on the contrary, find him considering the estate as belonging to Scott’s heirs, subject to the lien of his mortgage. Probably both mortgagor and mortgagee supposed, that, if the money should not be paid according to the condition of the bond, the obligation to reconvey was gone ; and, after the expiration of six years, there is no doubt that Southgate believed he should be the absolute owner of the estate. For the effect of a bond of defeasance was not, at that time, generally known among the' people ; but this mode of providing for a reconveyance was commonly resorted to, with a view to avoid the inconvenience of a mortgage.
It was hardly pretended in the argument, that any thing took place in the lifetime of the mortgagee, which would intercept the right of the plaintiffs to redeem, if the bond continued in force during the six years. But it is supposed, that, since his death, the acts and declarations of his administrator and heirs will have that effect. We *255 see nothing, however, in the evidence, which will authorize us to consider it as proved, that the heirs of Southgate have * ever held the land expressly on the ground that the conditi'on of their ancestor’s bond to reconvey was broken.
The strongest testimony upon this point is, that, in a conversation between William Southgate and Samuel Scott, the latter stated that there was a bond to reconvey, which the former admitted, but at the same time denied its efficacy, because it had run out, and the time of redemption was gone. This took place more than three years before the tender was made. But this conversation is equivocal, as to its bearing upon the question before us. Both these parties may well have adopted the vulgar notion respecting the operation of a bond of defeasance, as their fathers probably did before ; and the expiration of time talked about might have had reference to the time stipulated in the condition of the bond. Besides, it does not appear from this conversation when possession was considered to be taken for condition broken ; nor was it declared, that in future it was to be holden for that cause. The most that can be gathered from it is, that William Southgate supposed that he and his father had kept possession long enough to foreclose the right of redemption.
The mere claim by a mortgagee to hold the premises as his own, without any declaration that he means to foreclose, we think is not sufficient to deprive the mortgagor, or his heirs, of a valuable interest. In the case of Newhall & al. vs. Wright, (3) it is said by Parsons, C. J., and the doctrine is undoubtedly correct, that, when a mortgagee enters before condition broken, the limitation of the right to redeem does not commence until notice by the mortgagee to the mortgagor, that he shall hold the possession for the breach of the condition. Probably, if the mortgagee should be without the Commonwealth, having no agent or family within it, a public declaration to that effect, in the presence of witnesses, might be equivalent to notice. We do not think that the loose conversation testified to by several of the witnesses as having taken place between William South gate and one and another of the heirs of William Scott, amounts * to such notice. It ought to have been more formal and particular, that the heirs might have known that the object of him in possession was to foreclose the right of re demption.
Nor will the length of time raise a presumption against the heirs For, besides that they were minors a considerable part of the time, it is in the highest degree probable, that they were ignorant of theii rights until recently, when the bond was discovered, and they hat obtained the advice of counsel
*256 A further objection to the plaintiffs’ suit is, that, if it be deter mined that an entry has not been made, nor possession taken, for condition broken, then it cannot be maintained ; because, by the statute providing this mode of relief, (4) such entry is an essential prerequisite to the action.
But it has lately been decided, in the case of Pomeroy vs. Winship, (5) that, where the mortgagee has entered before condition broken, and continues the possession until after the breach, without declaring his intention to foreclose, it is in the election of the mortgagor to consider him as holding for that purpose, and to make his tender, in order to defeat the estate. The reasons for this opinion are given in the case referred to.
We are therefore of opinion, as the deed and bond of defeasance undoubtedly constituted a mortgage ; as no possession has been taken which can destroy the right to redeem ; and as a tender has been made, which prima facie was sufficient to discharge all that was equitably due ; that the plaintiffs have maintained their suit, so far as that an account should be taken of the rents and profits of the estate, with an allowance for necessary and suitable repairs and expenditures ; after which a final decree will be made.

 Stat. 1798, c. 7

 Stat. 1783, c. 37.

 3 Mass. Rep. 155.

 Stat. 1785, c. 22.

 12 Ma Rep. 514.